UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.M.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                              Defendant. | Case No.: 19-CV-1108 TWR (AGS)<br><br>**AMENDED ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITHOUT PREJUDICE**<br><br>(ECF Nos. 12) |

Presently before the Court is Defendant the United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Mot.," ECF No. 12), as well as Plaintiff A.M.'s Partial Opposition to ("Opp'n," ECF No. 16) and Defendant's Reply in Support of ("Reply," ECF No. 18) the Motion. After the Honorable Anthony J. Battaglia took this matter under submission without oral argument pursuant to Civil Local Rule 7(d)(1), (*see* ECF No. 19), this action was transferred to the undersigned. (*See* ECF No. 20.) Having carefully considered Plaintiff's First Amended Complaint ("FAC," ECF No. 9), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's cause of action for negligence to the extent it is predicated on Defendant's failure to warn and Defendant's negligent supervision and retention.

/ / /

1

## BACKGROUND

### I.   Factual Background

Plaintiff alleges that her psychiatrist, Dr. Leon Fajerman, "committed acts of sexual harassment and negligent physical contact against" her.  (FAC ¶ 3.)  The events took place at San Ysidro Health Center ("SYHC"), a federally qualified health center, where Plaintiff claims that Dr. Fajerman had a "history and practice of sexually assaulting and attacking his patients."  (*Id.* ¶¶ 4–5.)  Plaintiff states that, unbeknownst to her, Dr. Fajerman was being investigated for similar conduct by the Medical Board of California, resulting in the suspension of his medical license in July 2017.  (*Id.* ¶¶ 35, 39–40.)  On "January 18, 2019, Dr. Fajerman was sentenced to three years of probation and 365 days of house arrest" after pleading "guilty to felony sexual contact with seven patients and misdemeanor sexual battery."  (*Id.* ¶ 45.)

### II.   Procedural History

On June 14, 2019, Plaintiff filed her complaint against Defendant under the Federal Torts Claim Act ("FTCA"), alleging claims for negligence and negligent hiring, supervision, and training.  (*See generally* ECF No. 1.)  On December 17, 2019, Plaintiff filed the operative First Amended Complaint alleging a single claim for negligence under the FTCA.  (FAC ¶¶ 46–61.)  On January 21, 2020, Defendant filed the instant Motion, seeking dismissal for lack of subject matter jurisdiction pursuant to the Federally Supported Health Centers Assistance Act ("FSHCAA"), the FTCA's limited waiver of sovereign immunity, and the discretionary function exception.  (*See generally* ECF No. 12.)

## LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction."  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  Accordingly, "[a] federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989).  The party asserting subject

/ / /

2

matter jurisdiction has the burden of persuasion for establishing it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a party may seek dismissal of an action for lack of subject-matter jurisdiction "either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Where the party asserts a facial challenge, the court limits its inquiry to the allegations set forth in the complaint. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In the case of a facial challenge, the Court assumes Plaintiff's "[factual] allegations to be true and draw[s] all reasonable inferences in [her] favor." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Where the party asserts a factual challenge, the court may consider extrinsic evidence demonstrating or refuting the existence of jurisdiction without converting the motion to dismiss into a motion for summary judgment. *Id.*

Here, Defendant argues that Plaintiff's First Amended Complaint fails to state a claim that is facially outside of the FSHCAA or the discretionary function exception to the FTCA. (Mot. at 2.) The Court therefore considers the allegations in the First Amended Complaint and draws all reasonable inferences in favor of Plaintiff.

## II.   Federal Tort Claims Act

As a general principle, the United States "may not be sued without its consent." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). The FTCA, however, provides consent to be sued for certain types of actions. Specifically, the FTCA provides that the United States may be sued "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 42 U.S.C. § 1346(b). The FTCA provides the exclusive remedy for tort lawsuits against the United States and allows the United States to be held liable to the same extent as a private employer under state law. 28 U.S.C. § 2679. California law therefore governs this FTCA case. 28 U.S.C. §§ 1346(b)(1), 2674.

The FSHCAA, 42 U.S.C. § 233(g), extends the application of the FTCA to certain public health entities, their employees, and qualified contractors receiving federal grants under 42 U.S.C. § 254(b).  The entities typically covered by the FSHCAA are community health centers that receive federal grants to serve underprivileged populations regardless of their ability to pay for service.  H.R. Rep. No. 104-398 at 5 (1995).

### ANALYSIS

Defendant argues the Court must dismiss the following claims: (1) failure to warn and advise Plaintiff of Dr. Fajerman's inappropriate conduct that led to his license being reviewed, and (2) negligent supervision and retention of Dr. Fajerman.  (*See* Mot. at 5–24.)

In her Opposition, Plaintiff concedes that she "is not alleging that United States' failure to warn her of Dr. Fajerman's suspended license and history of sexual misconduct is independently actionable under the FTCA" and that "the Motion to Dismiss is moot at to that point."  (Opp'n at 2).  The Court therefore **GRANTS** Defendant's Motion as to the failure to warn and advise claim and focuses its analysis on Plaintiff's negligent supervision and retention claim.

### I.   Related Functions

Defendant argues that the San Ysidro Health Administration's ("SYH") supervision and retention of Dr. Fajerman does not fall within the scope of FSHCAA's and FTCA's waiver of sovereign immunity because these functions are "administrative/human resources/employment [in] nature" that are "not the performance of medical, surgical, or dental functions."  (Mot. at 7).  Defendant also contends that "related functions" for purposes of the FSHCAA do not encompass "supervisory and retention decisions."  (Mot. at 9.)  Plaintiff retorts that the supervision and retention of a physician is a "related function" under the FSHCAA.  (Opp'n at 7.)

In a recent decision in a related case, *Sanchez v. United States*, the Court held that the plaintiff had established a basis for jurisdiction in her negligent hiring, supervision, and retention claim based on the FSHCAA because the psychiatrist's "actions were related to his treatment of [plaintiff] and appear[] . . . to have arisen from his employment."  No. 18-

4

CV-1550-AJB-AGS, 2019 WL 3766615, at *4 (S.D. Cal. Aug. 9, 2019). In *Sanchez*, the Court based its analysis on two cases. First, the Court reasoned that a "health center's or hospital's obligations . . . for vetting its physicians are inextricably woven into [its] performance of medical functions." *Id.* at *3 (second alteration in original) (internal quotation marks omitted) (quoting *Brignac v. United States*, 239 F. Supp. 3d 1367, 1377 (N.D. Ga. 2017) (quoting *Teresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 300 (D. Conn. 2001)). Second, the Court distinguished the plaintiff's case from another case where the court had recognized the sexual assault and murder of the victim was not related to the performance of dental functions. *See id.* at *3–4 (citing *La Casa de Buena Salud v. United States*, No. CIV 07-238 JB/RHS, 2008 WL 2323495, at *20 (D.N.M. Mar. 21, 2008)). In *Sanchez*, the Court ultimately granted the United States' motion to dismiss the plaintiff's negligent hiring, supervision, and retention claim for lack of subject-matter jurisdiction on the basis that the discretionary function exception applied. *Id.* at *4.

Here, Defendant raises arguments akin to those addressed in *Sanchez* and admits that it "failed to persuade the Court" in that case. (Mot. at 14.) Because this case raises substantially similar issues, the decision in *Sanchez* is dispositive. The Court acknowledges, however, that Defendant advances an additional argument not asserted in *Sanchez*: that the phrase "personal injury . . . resulting from the performance of medical, surgical, dental, or related functions" is ambiguous and, consequently, that the Court should give deference under *Auer v. Robbins*, 519 U.S. 452 (1997), to the U.S. Department of Health Services' ("HHS") limited application of the phrase to claims that "sound in medical malpractice." (Mot. at 21.)

The United States Supreme Court recently reassessed the *Auer* deference doctrine in a case about a "Vietnam War veteran seeking disability benefits from the Department of Veterans Affairs (VA)." *Kisor v. Wilkie*, 588 U.S. ___, 139 S. Ct. 2400, 2409 (2019). The Court laid out the following markers to be met before *Auer* deference is applied: (1) the regulation must be genuinely ambiguous and a court must exhaust all the traditional tools of construction; (2) the agency's interpretation must be reasonable, under the text,

structure, and history of the regulation; (3) the agency's interpretation must implicate its substantive expertise; (4) the interpretation must be the agency's authoritative or official position reflecting the agency's view, not merely an ad hoc statement; and (5) the agency's reading of the regulation must reflect fair and considered judgment. *Id*. at 2415–17. Although this Court recognizes that *Auer* deference gives agencies "significant leeway to say what its own rules mean," the Court is equally mindful that *Auer* deference does not "bestow[] on agencies expansive, 'unreviewable' authority." *Id*. at 2415, 2418. "In short, courts retain the final authority to approve—or not—the agency's reading of a notice-and-comment rule." *Id*. at 2420.

Although Defendant urges this Court to conclude that the phrase "personal injury . . . resulting from the performance of medical, surgical, dental, or related functions" is ambiguous after applying all traditional tools of interpretation, (Reply at 4–5), the Court does not find that the phrase falls within the realm of genuine ambiguity. Rather, as Defendant suggests, courts recognize the phrase as a form of medical malpractice. *See Brignac*, 239 F. Supp. 3d at 1378 (holding plaintiff's negligent hiring and retention claim "arguably sounds in medical malpractice"); *see also La Casa*, 2008 WL 2323495, at *20 ("The Court need not decide whether negligent hiring, supervision, and retention of a doctor is never a form of medical malpractice under the FSHCAA. Such activities, under certain circumstances, could be medical malpractice.").

Further, even if the Court were to defer to HHS' interpretation, the FTCA Health Center Policy Manual ("Policy Manual") to which Defendant points, provides specific examples of additional activities supporting the notion that supervision is an "act[] or omission[] of a covered entity." U.S. Dep't of Health & Human Servs., Health Res. & Servs. Administration, *Federal Tort Claims Act Health Center Policy Manual*, at 10 (July 21, 2014), available at https://bphc.hrsa.gov/sites/default/files/bphc/ftca/pdf/ftcahcpolicymanualpdf.pdf. For example, the Policy Manual specifies that

the *supervision* by a covered entity obstetrician of hospital staff during the delivery of a covered entity's patient is covered by the

> FTCA when the care to the . . . patient is a covered activity within the covered entity's approved scope of project and is within the scope of employment of the covered individual.

*Id*. at 10 (emphasis added). Similarly, SYH's supervision (or alleged lack thereof) of Dr. Fajerman's inappropriate conduct towards Plaintiff is a kind of covered activity because that supervision is within SYH's project scope and Dr. Fajerman's psychiatric services are within his employment scope as defined in the Policy Manual. *See id*. at 8. The Court therefore concludes that SYH's supervision and retention of Dr. Fajerman are related functions under the FSHCAA.

## II.   Discretionary Function Exception

Having determined that SYH's supervision and retention of Dr. Fajerman are related functions for purposes of the FSHCAA, the Court turns to whether the discretionary function exception under the FTCA applies. Where the United States is sued, federal courts have no jurisdiction absent the United States' consent. *See United States v. Mitchell*, 445 U.S. 535, 538 (1980). Certain federal statutes provide limited exceptions to this general rule. For example, the FTCA grants federal district courts exclusive jurisdiction over civil actions against the United States for damages "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

The discretionary function exception limits the FTCA's broad waiver of sovereign immunity. This exception precludes claims against the United States that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function exception applies, a court must engage in a two-step inquiry: first, the court must determine whether the challenged conduct involves an element of judgment or choice, *see Berkovitz v. United States*, 486 U.S. 531, 536 (1988); and second, if so, the court must determine whether the conduct implements social, economic, or political policy

7

considerations.  *See Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994).  To defeat a motion to dismiss, plaintiffs must advance a claim that is facially outside the discretionary function exception.  *Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

Here, Defendant argues that even if SYH's supervision and retention of Dr. Fajerman are "related functions" under the FSHCAA, thereby waiving sovereign immunity, Plaintiff's claim is still susceptible to the discretionary function exception.  (*See* Mot. at 16–24.)  Specifically, Defendant contends that the first step of the discretionary function exception analysis is satisfied because "Plaintiff does not allege that a federal statute, regulation, or policy required a specific course of action by SYH officials regarding the supervision or retention of Dr. Fajerman."  (*Id.* at 19.)  Defendant also argues that the second step of the discretionary function exception analysis is "satisfied because SYH's employment decisions regarding Dr. Fajerman are . . . based on considerations of public policy . . . [and] are discretionary acts the discretionary function exception removes from the FTCA's waiver of sovereign immunity."  (Mot. at 22.)

For the following reasons, the Court agrees that application of the two-step test demonstrates that the discretionary function exception bars Plaintiff's FTCA claim.

### A.    *Element of Judgment or Choice*

In determining whether an action or omission falls within the discretionary function exception, the Court starts with whether the challenged conduct involves an element of judgment or choice.  "[T]he requirement of judgment or choice is not satisfied if a 'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow,' because 'the employee has no rightful option but to adhere to the directive.'" *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536).  "The exception covers only acts that are discretionary in nature, . . . and 'it is the nature of the conduct, rather than the status of the actor' that governs whether the exception applies." *Id.* at 335 (quoting *Berkovitz*, 486 U.S. at 536; *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 812 (1984)).

/ / /

8

In *Sanchez*, the plaintiff "concede[d] the discretionary function generally applies to employment decisions" and, consequently, the Court did not proceed to further analyze the first step of the discretionary function exception analysis. *See* 2019 WL 3766615, at *5. Unlike the plaintiff in *Sanchez*, Plaintiff here argues that SYH failed to follow mandatory rules, regulations, and protocols "requir[ing] SYH to take action in response to knowledge of or complaints about sexual harassment or misconduct, including actions to prevent recurrence." (FAC ¶ 36.)   According to Plaintiff, SYH's failure to follow its own mandatory policies is not a discretionary act involving an element of judgment or choice. (*See* Opp'n at 9.)   Defendant, on the other hand, contends that SYH's policies "do not prescribe a specific course for SYH employees to follow regarding their response to allegations of sexual misconduct by Dr. Fajerman" and, therefore, SYH does have discretion.  (Reply at 8.)

Although Plaintiff alleges that SYH's rules and policies impose an obligation to respond, the alleged policies broadly require SYH only to "take action" and "prevent its recurrence." (FAC ¶ 37.)  Plaintiff does not allege that SYH employees are provided with specific guidance or particular conduct to fulfill these obligations.  *See French v. United States*, 195 F. Supp. 3d 947, 953 (N.D. Ohio 2016) ("[C]alling for government employees to 'provide protection' and 'provide safekeeping' to inmates in federal prison—were not specific enough to give rise to non-discretionary obligations" (quoting *Montez ex rel. Estate of Hearlson v. United States*, 359 F.3d 392, 396 (6th Cir. 2004))); *see also Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty.  The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.").  Without such specific guidelines, SYH's acts involved an element of discretion.

Even if Defendant were required to take action and prevent the recurrence of the sexual assault, however, SYH's mandatory rules, regulations, and protocols do not rise to the level of federal law.  Defendant argues SYH's alleged policies are irrelevant to the

9

analysis of the first step of the discretionary function exception because they "are not *federal* statutes, regulations, or policies . . . prevent[ing] the [DFE] from applying at step one." (Mot. at 20 (emphasis in original).)  Defendant points out that SYH is an employee for a limited purpose and not a federal agency able to "promulgate rules, regulations, protocols, or policies abrogating the United States' sovereign immunity protection." (*Id.* at 22.)

Defendant is correct—for SYH to have no discretion, its actions must be governed by a specific federal statute, regulation, or policy. *Berkovitz*, 486 U.S. at 536.  The rules and policies of SYH at issue here are not federal regulations or policies. *See Big Owl v. United States*, 961 F. Supp. 1304, 1308 (D.S.D. 1997) (finding that Tribal School Board is an employee of the Bureau of Indian Affairs and that its staff handbook does not rise to the level of federal statute, regulation, or policy).  The Court finds persuasive Defendant's rationale that it is unlikely that "each of the numerous health centers across the country deemed to be Public Health Center employees for purposes of requiring certain suits to be brought against the United States could promulgate their own policies that widened the potential liability against the United States." (Mot. at 22.)  The Court therefore concludes that step one of the discretionary function exception analysis is satisfied.

### B.   *Social, Economic, or Political Policy Considerations*

Next, the Court must consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322–23 (quotation marks omitted).  With regard to the second step of the discretionary function exception analysis, decisions relating to the hiring, supervision, and retention of employees generally involve policy judgments of the type Congress intended the discretionary function exception to protect. *See Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (holding that negligent employment, supervision and training claims "fall squarely within the discretionary function exception"); *see also Gourgue v. United States*, No. 12CV-1490-LAB, 2013 WL 1797099, at *2 (S.D. Cal. Apr. 29, 2013) ("[T]he Government's decision of how to train and supervise its employees is the kind of decision

that the discretionary function was designed to protect because it is susceptible to a policy analysis.").   The challenged action "need not be actually grounded in policy considerations;" rather, it simply needs to be, "by its nature, susceptible to a policy analysis." *Miller v. United States*, 163 F.3d 591, 593 (9th Cir. 1998).

Relying on *Tonelli*, Plaintiff argues that the discretionary function exception does not apply in situations where a defendant has failed to act in response to illegal conduct. (Opp'n at 10 (citing *Tonelli v. United States*, 60 F.3d 492, 496 (8th Cir. 1995)).)  In *Tonelli*, the Eighth Circuit held that the discretionary function exception did not apply because the plaintiffs' local postal office had failed to act after it had notice that a postal employee was tampering with the plaintiffs' mail, an omission that "does not represent a choice based on plausible policy considerations."  *Id.* at 494.  This Court, however, is not bound by the Eight Circuit, particularly where the Ninth Circuit has applied the discretionary function exception in similar circumstances and reached a contrary conclusion.

The Court finds that this case is more analogous to *Doe v. Holy See*, 557 F.3d 1066 (9th Cir. 2009), in which the plaintiff claimed that the Catholic Church negligently had supervised and retained a priest whom it knew or should have known "had a history of sexually abusing children." *Id.* at 1083.  The Ninth Circuit held that the plaintiff's causes of action for negligent hiring and supervision and failure to warn were barred by the discretionary function exception, *id.* at 1085, reasoning that some of the policy considerations affecting the Church's decision could have been the harm to its reputation, the effect of pastoral stability on parishioners' well-being, and staffing shortages.  *Id.*  The court therefore concluded the Church's decision was susceptible to policy considerations. *Id.*

Here, Plaintiff alleges that "SYH knew or should have known about Dr. Fajerman's history and practice of sexual contact (or attempted sexual contact) with patients," and that "he should not have been allowed to continue seeing female patients unattended."  (FAC ¶ 53.)  In her Opposition, Plaintiff asserts that the Ninth Circuit's decision in *Holy See* "offers no reason to depart from *Brignac* and *Tonelli*" because the Ninth Circuit's analysis

did not consider the argument regarding the defendant's failure to act in response to illegal conduct.  (Opp'n at 10.)  Although the Ninth Circuit in *Holy See* did not explicitly discuss this argument, it impliedly considered and rejected it by reversing the district court's denial of the defendant's motion to dismiss based on the reasoning in *Tonelli*.  Consequently, for purposes of the second prong of the discretionary function exception test, the decision regarding the supervision and retention of Dr. Fajerman is still susceptible to policy considerations.

In this case, following an investigation, the Medical Board of California suspended Dr. Fajerman's medical license in July 2017.  (FAC ¶ 38.)  At that point, the retention of Dr. Fajerman no longer involved any policy considerations.  Before the suspension of Dr. Fajerman's medical license, however, SYH might have decided to retain Dr. Fajerman to avoid unnecessarily alarming other patients while the investigation was ongoing, to balance insuring public safety and providing fairness to the accused, or to address staffing and funding concerns.  These types of social, economic, or political policy considerations could have influenced SYH's decision to hire, supervise, or retain Dr. Fajerman and are precisely the kinds of judgments the discretionary function exception was designed to shield.  Consequently, the second prong of the two-step discretionary function exception inquiry is met, and Plaintiff's FTCA claim as pled is barred by the discretionary function exception.  The Court therefore **GRANTS** Defendant's Motion.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion (ECF No. 12) and **DISMISSES WITHOUT PREJUDICE** Plaintiff's cause of action for negligence to the extent it is predicated on Defendant's failure to warn and Defendant's negligent supervision and retention.  *See Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not exist.").  Plaintiff's negligence cause of action survives to the extent that it alleges that Dr. Fajerman was negligent in administering Plaintiff's medical and mental healthcare treatment.

12

Plaintiff **MAY FILE** an amended complaint <u>on or before November 6, 2020</u>. *Should Plaintiff elect not to file an amended complaint, this action will proceed on Plaintiff's surviving negligence theory.* Defendant **SHALL FILE** a response to Plaintiff's operative complaint <u>on or before November 20, 2020</u>.

**IT IS SO ORDERED.**

Dated:  October 23, 2020

Honorable Todd W. Robinson
United States District Court

13

19-CV-1108 TWR (AGS)